COMMITTEE OF THE ESTATE OF JULIUS LIBERMAN, INCOMPETENT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26850. Promulgated July 24, 1930.

*Mark Eisner, Esq.*, and *Ferdinand Tannenbaum, Esq.*, for the petitioner.

*L. A. Luce, Esq.*, for the respondent.

### OPINION.

PHILLIPS: Respondent has determined deficiencies in income tax against petitioner for the calender year 1924 and the period January 1, 1925, to July 3, 1925, in the respective amounts of $28.15 and $7,084.30. The errors alleged are (1) that respondent has determined that the taxpayer did not sustain a net loss in the calendar year 1923 under the provisions of section 204 of the Revenue Act of 1921; (2) that he has determined the net income of the taxpayer for the year 1924 without any allowance of a deduction of any part of the net loss sustained for the year 1923; and (3) that he has determined the net income of the taxpayer for the period January 1, 1925 to July 3, 1925, without any allowance of any part of the excess of the deduction over gross income for 1924 of the net loss sustained in 1923. Two other assignments of error deal with the details of the computation of the alleged net loss for 1923.

On February 14, 1917, Isaac Liberman, Jennie Wener, and Max Mayer were by order of the Supreme Court of the State of New York, First Judicial District, appointed committee of the estate of Julius Liberman, incompetent, hereinafter referred to as the committee of the estate. They accepted the office, qualified as such, and gave bond in the amount of $1,000,000. On the same day Isaac Liberman was appointed by the same court the committee of the person of said incompetent. He accepted said office and qualified as such. In June, 1920, Mayer resigned as one of the committee of the estate and his resignation was accepted by the court. The incompetent died July 3, 1925.

The net income of the committee of the estate for the year 1924, without the allowance of any part of the net loss claimed for the year 1923, was $13,607.18. The net income of the committee of the estate for the period from January 1 to July 3, 1925, without the allowance of any part of the excess of the net loss claimed for 1923 over the net income for 1924, was $61,603.21. The Commissioner determined the net income for 1924 without allowing any deduction for any part of the net loss claimed by petitioner for 1923, and

determined the net income for the period from January 1 to July 3, 1925, without the allowance of any deduction for the excess of the net loss claimed for 1923 over the net income for 1924. The deficiencies here in question were computed upon the basis of the net income so determined.

The record before the Board consists of the pleadings, the report of a revenue agent showing the computation of income for the years involved, and certified copies of accounts rendered by the committee of the estate and of the person to the court and the decrees entered thereon. The facts are not in dispute and formal findings appear unnecessary. The single question involved is whether there was a net loss in 1923 within the provisions of the Revenue Act of 1921, which provides in section 204 (a) as follows:

That as used in this section the term "net loss" means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business) ; and when so resulting means the excess of the deductions allowed by section 214 or 234, as the case may be, over the sum of the following: (1) the gross income of the taxpayer for the taxable year, (2) the amount by which the interest received from taxation under this title exceeds so much of the interest paid or accrued within the taxable year on indebtedness as is not permitted to be deducted by paragraph (2) of subdivision (a) of section 214 or by paragraph (2) of subdivision (a) of section 234, (3) the amount by which deductible losses not sustained in such trade or business exceed the taxable gains or profits not derived from such trade or business, (4) amounts received as dividends and allowed as a deduction under paragraph (6) of subdivision (a) of section 234, and (5) so much of the depletion deduction allowed with respect to any mine, oil or gas well as is based upon discovery value in lieu of cost.

If such net loss was sustained, it is deductible in 1924 and 1925 in accordance with the provisions of section 206 of the Revenue Act of 1924.

The decision of this case turns primarily upon whether there was a "trade or business regularly carried on by the taxpayer." The contentions urged upon us by petitioner appear to assume that the taxpayer is the committee of the estate. Upon this assumption it is argued that the only function of the committee was to preserve and improve the assets and pay for the safekeeping, maintenance and education of the incompetent and his family, and that the performance of such duties must be recognized as a business. If this argument were advanced by one of the committee in an attempt to deduct on his personal return expenses paid by him in performing his duties, but not reimbursed from the estate, it might be appropriate. Managing the affairs of incompetents may be a trade or business of the person so engaged, but that is not the case we have before us.

.The Revenue Act provides for the imposition of the income tax upon the net income of every individual. (Section 210.) It is provided that the individual shall make a return of his income and, further, "if the taxpayer is unable to make his own returns, the return shall be made by a duly authorized agent or by the guardian or other person charged with the care of the person or property of such taxpayer." (Section 223.) There is no provision in the Act which makes the committee of an incompetent a taxpayer; it is the individual for whom such committee acts who is the taxpayer. The committee is required to make the return and pay the tax, but in so doing it is acting for the incompetent. The question then is whether the incompetent was engaged in a trade or business, and in considering this question we must, of course, recognize that the incompetent acts through his committee. The question whether the incompetent, through his committee, was engaged in a trade or business is entirely different from the question whether the performance of the duties of a committee of an incompetent may .be a trade or business. We proceed to consider the issue first stated.

On February 14, 1917, the date of the appointment of the committee of the estate, the property of the decedent was made up as follows:

| | |
|---|---:|
| 20,595½ shares of corporate stock consisting of 86 different lots and appraised at | $1, 538, 797. 70 |
| 3,210 shares of stock, 12 lots, appraised at | No value. |
| 103 bonds, 12 lots, appraised at | 67, 749. 85 |
| Cash | 13, 439. 81 |
| 4 accounts receivable | 25, 790. 00 |
| 1 bond and mortgage | 69, 000. 00 |
| Jewelry | 800. 00 |
| Interest of incompetent in share of Isaac Liberman in indebtedness of Hereford Realty Co. in firm of Liberman, Levy & Co | 43, 177. 62 |
| Proportionate share of incompetent in indebtedness of Hereford Realty Co. in firm of Liberman, Levy & Co., exclusive of interest | 38, 308. 12 |
| 8½ rights R. J. Reynolds Tobacco preferred | 132. 00 |
| Total | 1, 797, 195. 10 |

The accounting of the committee discloses that by February 1, 1920, there remained only twenty lots of corporate stocks, the remainder having been sold and the proceeds invested principally in bonds of the United States and of the city of New York.

During the period from February 1 to December 31, 1920, $48,633.99 was collected from dividends and interest, $11,616.65 was expended for rent, clerical services, attorneys' fees, premium on bond and other expenses of administration, $6,415 was collected from bonds and scrip paid at maturity, $17,750 was collected upon principal indebtedness due upon mortgages, and $17,200 was collected upon account of

the interest of incompetent in the indebtedness of the. Hereford Realty Co.

During 1921, $61,457.96 was collected from dividends and interest, $2,800.23 was expended for rent, clerical services, premium on bond and other expenses of administration, $160,700.20 was realized from the sale of United States Liberty bonds, $17,500 collected upon principal indebtedness due upon mortgages, and $600 was collected upon account of the interest of incompetent in the indebtedness of the Hereford Realty Co.

During 1922, $64,995.67 was collected from dividends and interest, $15,169.37 was expended for rent, clerical services, premium on bond and other expenses classified as administration expenses, which includes Federal income taxes of $2,750.31, state taxes of $93.23, and interest of $7,367.67, $18,000 was collected upon principal indebtedness due upon mortgages, and $39,000 was collected upon account of the interest of the incompetent in the indebtedness of Hereford Realty Co.

During 1923, $68,746.28 was collected from dividends and interest, $87,826.80 was expended for rent, clerical services, premium on bond and other administration expenses, including $65,000 allowed as commissions to persons serving as committee of the person and of the estate of the incompetent, $12,250 allowed to referees and special guardians on the accounting and $7,722.65 for attorneys' fees, $62,814.57 was received upon the sale of bonds, $15,000 was collected upon mortgages, $47,655.24 was collected upon account of the interest of the incompetent in the indebtedness of Hereford Realty Co., and $27,145.38 was received from the sale of a block of corporate stock.

The property of the incompetent in the hands of the committee of the estate on May 15, 1923, with the inventory value thereof, was as follows:

| | |
|---|---:|
| Cash | $6,662.45 |
| United States bonds and notes, 5 issues | 135,412.50 |
| Federal Land Bank bonds, 1 issue | 203,027.50 |
| City of New York bonds, 6 issues | 792,315.31 |
| Mortgages, four properties | 107,875.00 |
| Corporate bonds, 15 issues | 179,242.75 |
| Corporate stocks, 14 issues | 129,786.37 |
| Corporate stocks, 14 issues | No value |
| Jewelry | 800.00 |
| Claim with respect to interest of Isaac Liberman in debt owing from Hereford Realty Co., to Liberman, Levy & Co | 9,000.00 |
| Share of incompetent in indebtedness of Hereford Realty Co. to Liberman, Levy & Co | 37,020.15 |
| Total estate | 1,601,142.03 |

It appears that for some years prior to and including 1923 the great bulk of the property of the incompetent was invested in bonds, which are recognized as legal for trust funds and which are generally regarded as among the safest investments to be had. Each year there were some collections of principal and occasionally some sales, but the principal activity was the receipt and handling of interest and dividend payments. The estate appears to have been managed with a view to conservative investment of the funds and not for the purpose of profit from the purchase and sale of its property. It can not be doubted that sound investment and not profit is the objective required of those who handle the property of an incompetent. Any attempt on the part of the committee to engage in trade or business, as those words are generally used, would not have received the approval of the court. *Kent* v. *West*, 53 N. Y. S. 244 (appeal dismissed, 163 N. Y. 589; 57 N. E. 1114). The statute permits losses to be carried forward from one year to another only when incurred from " the operation of any trade or business regularly carried on by the taxpayer." It seems to us to be clear that neither the incompetent, nor his committee on his behalf, were engaged in the operation of any trade or business during the year 1923 as that phrase is used in the Revenue Act.

It is pointed out by petitioner that deductions have been allowed to individuals and to fiduciaries for such expenses as office rent, salaries, attorneys' fees and commissions when such persons were engaged only in the investment of their funds. The deduction of such expenses as are proximately connected with the production of income, whether from trade or investment, may be justified under a reasonably liberal interpretation of section 214 of the Act, but the net loss provision prescribes a more stringent test. The intendment of Congress with respect to section 214 may be gathered from the provision which allows the deduction of losses sustained in any transaction entered into for profit, whether or not connected with a trade or business. The net loss provision, on the contrary, limits the loss which may be carried forward from one year to another to those losses which result from a trade or business regularly carried on. The loss here is not of the kind with which the net loss provision deals, resulting as it does from expenses incurred by reason of the unfortunate handicap of the taxpayer and not by any business transactions.

*Decision will be entered for the respondent.*